1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9   BARRY JAMESON,                          1:07-cv-01344 LJO DLB (HC)

10                 Petitioner,              FINDINGS AND RECOMMENDATION
                                            REGARDING PETITION FOR WRIT OF
11         v.                               HABEAS CORPUS

12                                          [Doc. 1]
     JAMES YATES, Warden,
13
                   Respondent.
14   _____/

15
16         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

18                                     BACKGROUND

19         Petitioner is currently in the custody of the California Department of Corrections and

20   Rehabilitation, following a conviction in the Los Angeles Superior Court, for second degree

21   murder.  (Exhibit 1, attached to Answer.)  Petitioner is serving an indeterminate sentence of

     fifteen years to life.  (Id.)
22
23         In the instant petition, Petitioner does not challenge the validity of his conviction or

24   sentence; rather, he contends that his due process rights were violated in relation to an

25   institutional disciplinary violation he received for failure to comply with emergency procedures.

26         Petitioner filed a state petition for writ of habeas corpus in the Fresno County Superior

27   Court raising his due process challenge.  (Exhibit 3, attached to Answer.)  The superior court

28   denied the petition without prejudice because Petitioner failed to properly exhaust the

1

1   administrative remedies, improperly combined two distinct writ remedies, and had a record of

2   filing questionable and/or procedurally defective petitions in that court.  (Exhibit 4, attached to

3   Answer.)

4          Thereafter, Petitioner filed a petition in the California Court of Appeal, Fifth Appellate

5   District, which was summarily denied.  (Exhibit 5, attached to Answer.)

6          Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court,

7   which was also summarily denied.  (Exhibit 6, attached to Answer.)

8          Petitioner filed the instant federal petition for writ of habeas corpus on September 14,

9   2007.  Respondent filed an answer to the petition on March 13, 2008, and Petitioner filed a

10   traverse on April 9, 2008.  (Court Docs. 12, 15, 16.)

11          Pursuant to this Court's order, Respondent filed supplemental briefing on September 11,

12   2008, and Petitioner filed a reply on September 29, 2008.  (Court Docs. 18-27.)

13                                          DISCUSSION

14   I.      Jurisdiction

15          Relief by way of a petition for writ of habeas corpus extends to a person in custody

16   pursuant to a judgment of a state court if the custody is in violation of the Constitution or laws or

17   treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

18   529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as

19   guaranteed by the U.S. Constitution.  Petitioner's claims for relief arise out of a disciplinary

20   hearing. Petitioner is confined at the Pleasant Valley State Prison in Coalinga, California, which

21   is located within the jurisdiction of this Court. 28 U.S.C. §§ 2254(a), 2241(d). If a constitutional

22   violation has resulted in the loss of time credits, such violation affects the duration of a sentence,

23   and the violation may be remedied by way of a petition for writ of habeas corpus. Young v.

24   Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990).

25   II.    Standard of Review

26          This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

27   custody pursuant to the judgment of a State court only on the ground that he is in custody in

28   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

1    The AEDPA altered the standard of review that a federal habeas court must apply with

2    respect to a state prisoner's claim that was adjudicated on the merits in state court. <u>Williams v.</u>

3    <u>Taylor</u>, 529 U.S. 362 (2000). Under the AEDPA, an application for writ of habeas corpus will

4    not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or

5    involved an unreasonable application of, clearly established Federal law, as determined by the

6    Supreme Court of the United States;" or "resulted in a decision that was based on an

7    unreasonable determination of the facts in light of the evidence presented in the State Court

8    proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166 (2003), *disapproving the*

9    *Ninth Circuit's approach in* <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000); <u>Williams</u>, 529

10   U.S. 362. "A federal habeas court may not issue the writ simply because that court concludes in

11   its independent judgment that the relevant state court decision applied clearly established federal

12   law erroneously or incorrectly." <u>Lockyer</u>, 123 S.Ct. at 1175 (citations omitted). "Rather, that

13   application must be objectively unreasonable." <u>Id</u>. (citations omitted).

14   While habeas corpus relief is an important instrument to assure that individuals are

15   constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983); <u>Harris v. Nelson</u>, 394

16   U.S. 286, 290 (1969), direct review of a criminal conviction is the primary method for a

17   petitioner to challenge that conviction. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633 (1993). In

18   addition, the state court's factual determinations must be presumed correct, and the federal court

19   must accept all factual findings made by the state court unless the petitioner can rebut "the

20   presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v.</u>

21   <u>Elem</u>, 514 U.S. 765 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99 (1995); <u>Langford v. Day</u>, 110

22   F.3d 1380, 1388 (9th Cir. 1997).

23   III.    <u>Procedural Default</u>

24   In his supplemental briefing, Respondent admits that Petitioner's claims have been

25   exhausted; however, Respondent argues that the claims are procedurally defaulted.

26   Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court

27   raising his due process challenge in connection to the disciplinary action.  (Exhibit 1, attached to

28   Supplemental Briefing, Court Doc. 18.)  The petition was denied on the grounds that Petitioner

1   failed to properly exhaust his administrative remedies, improperly combined two separate

2   extraordinary writs, and had a record of supplying either questionable or procedurally defaulted

3   petitions. (Exhibit 2.) The petition was denied without prejudice to curing the deficiencies. (Id.)

4          On May 15, 2006, Petitioner filed a subsequent petition in the Fresno County Superior

5   Court. (Exhibit 3, to Supplemental Briefing.) The petition was denied on the ground that

6   Petitioner did not properly exhaust his administrative remedies. (Exhibit 7, to Supplemental

7   Briefing; Exhibit L, to Petition.) In the alternative, the court found that a review of the record

8   indicated there was some evidence to support the disciplinary action. (Id.)

9          Thereafter, Petitioner filed petitions in the California Court of Appeal and the California

10  Supreme Court, which were both summarily denied. (Exhibits 8, 9, 10, 11.) Because the

11  California Supreme Court's opinion is summary in nature, however, this Court "looks through"

12  that decision and presumes it adopted the reasoning of the Fresno County Superior Court, the last

13  state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 &

14  n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

15         Federal courts "will not review a question of federal law decided by a state court if the

16  decision of that court rests on a state law ground that is independent of the federal question and

17  adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); LaCrosse

18  v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001). If the court finds an independent and adequate state

19  procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause

20  for the procedural default and actual prejudice, or demonstrate that the failure to consider the

21  claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-05

22  (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir.

23  2000).

24         "For a state procedural rule to be 'independent,' the state law basis for the decision must

25  not be interwoven with federal law." LaCrosse, 244 F.3d at 704, citing Michigan v. Long, 463

26  U.S. 1032, 1040-41 (1983); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996), quoting

27  Coleman, 501 U.S. at 735 ("Federal habeas review is not barred if the state decision 'fairly

28  appears to rest primarily on federal law, or to be interwoven with federal law.'"). "A state law is

4

1  so interwoven if 'the state has made application of the procedural bar depend on an antecedent

2  ruling on federal law [such as] the determination of whether federal constitutional error has been

3  committed." Park, 202 F.3d at 1152, *quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

4      To be deemed adequate, the state law ground for the decision must be well-established

5  and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999), *quoting* Ford v.

6  Georgia, 498 U.S. 411, 424 (1991) ("A state procedural rule constitutes an adequate bar to

7  federal court review if it was 'firmly established and regularly followed' at the time it was

8  applied by the state court."). Although a state court's exercise of judicial discretion will not

9  necessarily render a rule inadequate, the discretion must entail "the exercise of judgment

10 according to standards that, at least over time, can become known and understood within

11 reasonable operating limits." Id. at 377, *quoting* Morales, 85 F.3d at 1392.

12     In Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003), the Ninth Circuit held that

13 although the California untimeliness rule as expressed in In re Robbins was an independent state

14 procedural ground, the Court could not conclude that it was an adequate state procedural ground

15 on the basis of the record before it. The Ninth Circuit remanded the case to the district court to

16 determine the issue of adequacy (whether the timeliness bar was sufficiently well-established and

17 consistently applied at the time the default occurred). Id. While the ultimate burden of proving

18 adequacy rests with the respondent, the petitioner must place the state's affirmative defense of

19 independent and adequate state procedural grounds at issue "by asserting specific factual

20 allegations that demonstrate the inadequacy of the state procedure." Id.

21     Here, the Fresno County Superior Court found that Petitioner failed to exhaust the

22 administrative remedies.  In In re Dexter, 25 Cal.3d 921 (1979), the California Supreme Court

23 held in relevant part that an inmate will not be afforded judicial relief unless he has exhausted

24 available administrative remedies. Id.

25     The California Department of Corrections has an administrative grievance system for

26 prisoner complaints. Cal. Code Regs., tit. 15 § 3084 et seq. (2004). "Any inmate or parolee under

27 the department's jurisdiction may appeal any departmental decision, action, condition, or policy

28 which they can reasonably demonstrate as having an adverse effect upon their welfare." Id. at

§ 3084.1(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level - also known as the "Director's Level." Id. at § 3084.5. The Director's Level is the final administrative level of review. See Wyatt v. Terhune, 315 F.3d 1108, 1116 (9th Cir. 2003).

In this case, the Fresno County Superior Court clearly and unambiguously denied the state petition on the ground that Petitioner failed to exhaust the administrative remedies. (Exhibit 7, to Supplemental Briefing; Exhibit L, to Petition.)  In response, Petitioner argues that he attempted on several occasions to submit grievances all of which were rejected for various different reasons. (See Court Doc. 16, at 6-11; Court Doc. 27, at 9-22.)  However, the two relevant grievances were denied for exceeding the page limitation and untimely. (Exhibits E & F, to Petition.)

The rule in California that an inmate must exhaust his administrative appeals is well-established and has been applied since 1941. See Abelleira v. District Court of Appeal, 17 Cal.2d 280, 292 (Cal. 1941). The rule was firmly established at the time of Petitioner's default in 2005 and has been consistently applied since Abelleira. Dexter, 25 Cal.3d at 925; In re Muszalski, 52 Cal.App.3d 500, 503 (1975); In re Serna, 76 Cal.App.3d 1010, 1014 (1978); In re Arias, 42 Cal.3d 667, 678 (1986), Wright v. State, 122 Cal.App.4th 659 (Cal.App. 2004). In addition, Dexter is solely based on state law and is therefore independent of federal law. See Carter v. Giurbino, 385 F.3d 1194, 1197-98 (9th Cir.2004) (state rule independent where "[n]o federal analysis enters into the [rule's] equation"). Thus, the rule in Dexter is an adequate and independent state ground that bars this Court from reaching the merits of Petitioner's claims. Furthermore, Petitioner has failed to establish cause and prejudice sufficient to excuse the default.

IV.    Review of Petition

Petitioner contends that his due process rights were violated because he was not provided sufficient notice of the lesser included offense of failure to comply with emergency procedures. He further argues the evidence is insufficient to support the finding of guilt.  Notwithstanding the fact that the petition should be dismissed based on Petitioner's procedural default, the petition is

1  also without merit because the due process requirements were met and there is "some evidence"

2  to support the rules violation.

3          Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

4  diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell,

5  418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution,

6  so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a

7  prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.

8  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472

9  U.S. 445, 454-455 (1984).

10         However, when a prison disciplinary proceeding may result in the loss of good time

11  credits, due process requires that the prisoner receive: (1) advance written notice of at least 24

12  hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety

13  and correctional goals, to call witnesses and present documentary evidence in his defense; and

14  (3) a written statement by the factfinder of the evidence relied on and the reasons for the

15  disciplinary action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process

16  requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, *citing* United

17  States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

18         The function of the advance written notice is to inform the inmate of the charges and

19  enable him to gather and present the facts in his defense.  Wolff, 418 U.S. at 564.  In this

20  instance, Petitioner was initially charged with participation in a riot in violation of California

21  Code of Regulations, title 15, section 3005(c) (now subsection (d) as amended, effective

22  December 28, 2007), a Division D offense carrying a potential exposure of losing 61 to 90 days

23  of credit.  (Exhibit 2, at 1.)  The rules violation report outlines in detail the factual circumstances

24  supporting the disciplinary action taken against Petitioner.  During the riot several orders were

25  issued for the inmates to "get down" with negative results.  At the rules hearing, Petitioner was

26  found not guilty as to the charged offense but found guilty of the lesser included offense of

27  failure to comply with emergency procedures for failing comply with staff's orders to get down.

28  This finding does not render the notice of the charged offense deficient as Petitioner was

1   provided with the date, time, place, and facts at issue.  In addition, the hearing officer has the

2   authority to reduce the offense at his/her discretion during the disciplinary hearing.  See Cal.

3   Code Regs. tit. 15, § 3313(c).  Therefore, there is no basis to support Petitioner's contention that

4   he did not have sufficient notice in advance of the hearing to prepare and present his defense, and

5   his claim to the contrary is unfounded.

6          Petitioner was provided all the due process rights entitled under Wolff.  He was given

7   notice of the charges and evidence that would be used at the hearing at least twenty-four hours

8   prior. (Exhibit 2, at 1, 5.)  He received copies of the rules violation report, investigate employee

9   report, incident report, and reviewed the videotape of the incident, prior to the hearing. (Exhibit

10  2, at 1, 5.)  He was provided the opportunity to present evidence at the hearing which included

11  his written and oral statements and stipulated testimony by three different inmate witnesses

12  verifying that inmates must self segregate. (Id. at 2-3.)  Petitioner concedes that he submitted his

13  written statement to the SHO, which was reviewed and considered, and he was found not guilty

14  of participation in the riot. (See Court Doc. 27, Reply, at 23.)  On October 20, 2005, Petitioner

15  received a copy of the written statement of the evidence relied upon and the reasons why he was

16  found guilty of the rules violation. (Id. at 1, 3.)  Accordingly, Petitioner received all the process

17  he was due as explained in Wolff.

18         The Court finds there is "some evidence" to support the rules violation issued to

19  Petitioner.  The written rules violation issued by correctional officer Gonzales states that on

20  August 22, 2005, a riot occurred on the recreation yard between two different factions of inmates,

21  including the Whites and the Fresno Bulldogs. (Exhibit 2, Rules Violation Report, at 1.)  There

22  were approximately 186 inmates involved, and a video tape recording demonstrated that all the

23  White and Bulldog inmates on the recreation yard at the time of the incident were actively

24  participating by kicking and punching one another.  The inmates were given numerous orders to

25  "Get down" to no avail.  When staff were able to regain control of the yard, the White inmates

26  retreated to the grass area by the Horseshoe Pit and Bar Course, and the Bulldog inmates

27  retreated to the grass and asphalt track area.  Officers then conducted a search of inmates

28  involved in the incident, and Petitioner was identified in the area with the White inmates.

1   Petitioner's presence in that area indicated that he was involved in the riot, resulting in the

2   issuance of a rules violation.

3        On September 29, 2005, Petitioner appeared before Senior Hearing Officer ("SHO") A.

4   Shimmin for a hearing on the rules violation.  After reviewing all the evidence, Petitioner was

5   found not guilty of the charged offense of participation in a riot, but was found guilty of the

6   lesser offense of failure to comply with emergency procedures, and received a credit forfeiture of

7   30 days.  (Exhibit 2, at 1-3.)  California Code Regulations, title 15, section 3005, subdivision (b),

8   states, "Inmates and parolees must promptly and courteously obey written and verbal orders and

9   instructions from department staff, and from employees of other agencies with authorized

10   responsibility for the custody and supervision of inmates and parolees."  Specifically, the SHO

11   considered Petitioner's written and oral statements made at the hearing, stipulated testimony by

12   three separate inmate witnesses, and officer Gonzales' written report and testimony at the

13   hearing.  Petitioner's defense that "he was in the area and immediately got down when the yard

14   was ordered down, however, . . . as a result of the combatants near him and because of staff's use

15   of gas and block, guns het got up during the incident fearing for his safety and moved" was

16   considered by the SHO.  (Exhibit 2, attached to Answer, Rules Violation Report, at p.2.)  On

17   balance, the SHO found that the preponderance of the evidence supported the finding of guilt

18   based on Gonzales' report, review of the video tape of the riot, and Petitioner's admission that he

19   got up to move without instruction by staff.  (Id. at 3.)

20        Petitioner's submission that he may choose to disobey direct orders by officers during a

21   riot involving a large number of inmates is not well-taken.  If Petitioner's theory is adopted then

22   an inmate could continue to fight if he believed he was doing so in self-defense, all the time

23   disobeying direct orders to get down.  The allowance of inmates to pick and chose which orders

24   to obey will undoubtedly lead to complete chaos in the prison, particularly at the time of a riot.

25   While there certainly may be instances in which direct orders given by prison officers are

26   obviously illegal, this is clearly not one of those orders.  The direct orders to "get down" were an

27   automatic and routine response to suppress the riot, of which Petitioner had no right to violate.  It

28   was only when prison guards were able to cease the riot that inmates were allowed to retreat to

certain areas of the yard.  Petitioner concedes he did so without authorization from prison staff. Based on the foregoing, there is some evidence to support the finding that Petitioner failed to comply with the verbal orders to "get down", in violation of section 3005(b).

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      The petition for writ of habeas corpus be DENIED; and

2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **November 15, 2008**                    **/s/ Dennis L. Beck**
                                                  UNITED STATES MAGISTRATE JUDGE

10